Filed 12/10/21  P. v. Henderson CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).   This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B309677 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A918235) |
| v. | |
| ARTHUR LEE HENDERSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nicole C. Bershon, Judge.  Affirmed.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kristen J. Inberg and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Arthur Lee Henderson appeals from a postjudgment order denying his petition for resentencing under Penal Code section 1170.95[1] as to his 1988 convictions of first degree murder and attempted murder.  Henderson contends the trial court erred in acting as an independent factfinder and summarily denying his petition before issuing an order to show cause and holding an evidentiary hearing pursuant to section 1170.95, subdivision (d).  However, as to the murder conviction, the jury was instructed it could only find the felony-murder special circumstance true if it found Henderson had the intent to kill.

As to the attempted murder conviction, Henderson contends, the People concede, and we agree the superior court's order denying Henderson's petition should be reversed for the court to consider Henderson's petition in light of recent amendments to section 1170.95 enacted by Senate Bill No. 775 (Senate Bill 775) (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), signed by the Governor on October 5, 2021, which will take effect January 1, 2022.  We therefore affirm the superior court's order as to Henderson's murder conviction and reverse the order as to the attempted murder conviction.  We remand for the court to consider, after January 1, 2022, Henderson's petition as to his attempted murder conviction under the amendments to section 1170.95.

---

[1]     All statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Evidence at Trial*

We described the 1986 killing of Kenneth Fields in our prior opinion in *People v. Elgin et al.* (Sept. 21, 1989, B033856) [nonpub. opn.]. On the morning of Sunday, December 7, 1986, David Davis and Anthony Pierce stopped by the house of Henderson's mother and talked with Henderson in front of the house for about 10 minutes. Davis bragged about his pickup truck and showed Henderson about $900, which Davis said he was going to use to fix up the truck. Davis had known Henderson for about nine months, and until recently he had lived near Henderson's mother. Davis considered Henderson a friend and admired Henderson's truck. Cylon Elgin was sitting on the curb near the house and drinking beer. Davis had previously seen Elgin in the neighborhood 55 or 60 times.

At about 8:00 that evening, Davis and Kenneth Fields were in Davis's kitchen when Henderson came to the door and said his truck had broken down on the street. Davis let Henderson in, but Henderson shortly left, saying he needed to check on his truck. Davis left the exterior security door open so Henderson could return. About 30 to 60 seconds later Davis heard footsteps, and the door banged in a way that indicated it had not been latched. Elgin appeared in the kitchen doorway wearing a ski mask. Davis recognized Elgin immediately by his movements and walk. Elgin pointed a revolver directly at Davis and demanded, "Give me the money." Davis "rushed him" and was "tussling with him" to take the gun away. Davis and Elgin struggled back and forth for about 30 seconds, then Davis was hit on the head and fell to the floor. Davis was unconscious for about 30 seconds.

After Davis regained consciousness, he lay on the kitchen floor and kept his eyes closed, pretending to be dead. He thought he heard some gunshots when he awakened and two or more people running through the house. While he was on the floor, Davis heard in Henderson's voice, "Shoot him in the head," or "Shoot them in the head." Another voice that Davis did not recognize asked, "Where is it at?" Davis had about $900 in his pants pockets, but no one looked through his pockets.

When Davis was sure the men had left, he got up and examined Fields, who was lying by the kitchen sink. Fields had been shot in the chest; Davis had been shot in his left bicep. A neighbor called the police, and Davis and Fields were transported to the hospital. Davis stayed there five days; Fields died.

Two deputies who interviewed Davis in the hospital obtained a statement from him that Henderson (known to Davis as "Art") came to Davis's house and asked to use the telephone because his car ran out of gas.[2] Davis let Henderson in, and while Henderson was on the telephone, another person confronted Davis in the kitchen and pointed a revolver at him, saying, "Give me the money, motherfucker, or I'll kill you." After the shooting, Davis heard Henderson tell the second suspect to "[s]hoot them in the head" and "[m]ake sure they are dead."

Davis later identified Henderson and Elgin from photographs. Davis was positive Elgin was the man in the mask and Henderson made the statement about shooting them in the head. About two weeks later, Henderson's brother-in-law, Wilferton Roberts, told the police he was at Henderson's home

---

[2] Davis's statement at the hospital differed in minor respects from his testimony at trial.

4

when he overheard Henderson and Elgin talk about a shooting. Elgin said he had done the shooting; Roberts could not recall what Henderson said.

Elgin's brother, Keith McComb, McComb's girlfriend, and Elgin's girlfriend provided alibis as part of the defense case. Elgin's girlfriend testified that on the night of the murder Elgin was with her at her parents' home between 8:00 and 8:15, and he did not leave. He was not nervous, upset, or fidgety.

B.      *Jury Instructions*

The trial court instructed the jury with CALJIC No. 3.01 on aider and abettor liability. The court also instructed the jury with CALJIC 3.00 as to the natural and probable consequences doctrine: "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any act that he knowingly and intentionally aided or encouraged."

The court's instruction with CALJIC No. 8.11 as to murder provided that malice aforethought is implied "when the killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for life" or "when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." Further, the court instructed with CALJIC No. 8.21 on the felony-murder rule that "[t]he unlawful killing of a human being, whether intentional, unintentional or accidental,

which occurs as a result of the commission of or attempt to commit the crime of [r]obbery, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree."

The court also instructed the jury with CALJIC No. 8.81.17 that to prove the special circumstance that the defendant committed a murder in the commission of robbery or attempted robbery, it must be proved, among other elements, "[t]hat the defendant . . . intended to kill a human being . . . [or] . . . intended to aid another in the killing of a human being."[3] The trial court did not instruct the jury that Henderson had to be a major participant acting with reckless indifference to human life.

As to attempted murder, the trial court instructed the jury with CALJIC No. 8.66 that to prove the crime, it must be proved that "a direct but ineffectual act was done by one person toward killing another human being," and "the person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

The jury convicted Henderson and Elgin of the first degree murder of Fields (§ 187, subd. (a); count 1); the attempted murder of Davis (§§ 187, subd. (a), 664; count 2); and attempted robbery in an inhabited dwelling (former § 213.5, § 664; count 3). The jury also found true as to both defendants the special circumstance that the murder was committed during the course

---

[3] The introductory instruction on special circumstances (CALJIC No. 8.80) similarly provided that if the defendant was an aider and abettor and not the actual killer, to find the special circumstance of first degree murder to be true, "it must be proved beyond a reasonable doubt that he intended to aid in the killing of a human being . . . ."

6

of an attempted robbery.  (§ 190.2, former subd. (a)(17).)  The jury found true as to both defendants that a principal was armed with a firearm (§ 12022, subd. (a)) and as to Elgin, that he personally used a firearm (§ 12022.5).

The trial court sentenced Henderson on the murder count to life without the possibility of parole plus one year for the firearm enhancement.  The court imposed a consecutive term of 10 years on the attempted murder count (the upper term of nine years plus one year for the firearm enhancement).  The court imposed a three-year term for attempted robbery, plus one year for the firearm enhancement, to run concurrent to the sentences on the other counts.  We affirmed Henderson's convictions on appeal, rejecting Henderson's contention the evidence was insufficient to support a finding of premeditated and deliberate murder.  (*People v. Elgin, supra*, B033856.)

C.    *Henderson's Petition for Resentencing and the Superior Court's Ruling*

On January 11, 2019 Henderson, representing himself, filed a form petition for resentencing seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder.  In his petition, Henderson declared he "was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine," and he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."  He also checked the box on the form stating he was not the actual killer and did not act with the intent to kill.

7

On March 19, 2019 the superior court[4] found that Henderson had established a prima facie case he was eligible for relief under section 1170.95, set the matter for a hearing on whether to issue an order to show cause, and appointed counsel for Henderson.[5] In its opposition, the People argued Henderson was ineligible for relief as to the murder conviction because, by finding the felony-murder special circumstance to be true after being instructed with CALJIC No. 8.80, the jury must have found Henderson intended to kill Fields. The People argued as to attempted murder that the jury was instructed with CALJIC No. 8.66, which required for a guilty verdict that Henderson harbor "a specific intent to kill unlawfully another human being."

Henderson, through counsel, filed a response in which he argued the People had not proved beyond a reasonable doubt that he was a direct aider and abettor of the murder or, under the felony-murder rule, was a major participant in the robbery and acted with reckless indifference to human life. He also asserted he was entitled to relief from his attempted murder conviction, but he did not present any argument.

The superior court[6] ordered supplemental briefing on the impact on the petition of the trial court's instruction with

---

[4]    Judge Alan B. Honeycutt.

[5]    Although the minute order suggests the superior court issued an order to show cause, it appears the court set the matter for a hearing on whether an order to show cause should be issued. As will be discussed, the court later determined Henderson was not eligible for relief as a matter of law, and it did not issue an order to show cause.

[6]    Judge Nichole C. Bershon.

CALJIC Nos. 8.80[7] and 8.81.17.  The People in their supplemental brief reiterated that the jury found Henderson harbored express malice in finding the felony-murder special circumstance to be true.  Henderson did not file a supplemental brief.

At a hearing on December 3, 2020, the People again argued Henderson was ineligible for relief because the record of conviction showed the jury instructions on felony-murder special circumstances and attempted murder required a finding of intent to kill, and further, this court affirmed that finding on appeal. The superior court provided an oral tentative ruling to deny the petition based on Henderson's statement to "shoot them in the head" and this court's finding there was sufficient evidence of Henderson's intent to kill.  Henderson's attorney responded that Davis was not 100 percent sure Henderson made the comment to shoot the victims in the head, and thus an evidentiary hearing was appropriate.  Further, the court should set an evidentiary hearing to determine whether Henderson was a major participant and acted with reckless indifference to human life. The prosecutor reiterated that the jury "made an express finding on all the counts, . . . including the murder, that the defendant intended to kill.  That's it.  The conviction conforms with today's standard."  The court responded, "Right."  After hearing oral argument, the superior court denied the petition, finding Henderson ineligible for resentencing under section 1170.95.

Henderson timely appealed.

---

[7]    The superior court's order referenced CALJIC No. 8.80.81, but the jury was instructed on special circumstances with CALJIC No. 8.80.

**DISCUSSION**

A.      *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848 (*Gentile*).)  New section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  New section 189, subdivision (e), in turn, limits the felony-murder rule exception to the malice requirement for aiders and abettors to circumstances where the People prove the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also provides a procedure in new section 1170.95 for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189.  (*Lewis, supra*, 11 Cal.5th at p. 959; *Gentile, supra*, 10 Cal.5th at pp. 842-843.)  If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and could not now be convicted of murder because of changes to section 188

10

or 189 (§ 1170.95, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1170.95, subdivision (c).  (*Lewis*, at pp. 959-960.)  Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief.  (See § 1170.95, subd. (c); *Lewis*, at p. 964.)

In determining whether the petitioner has made a prima facie showing he or she is entitled to relief under section 1170.95, subdivision (c), "[l]ike the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."' [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'"  (*Lewis, supra*, 11 Cal.5th at p. 971.)

Appellate opinions are generally part of the record of conviction, but as the Supreme Court in *Lewis* cautioned, the opinion "'might not supply all the answers.'"  (*Lewis, supra*, 11 Cal.5th at p. 972.)  Further, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Ibid.*)  Rather, at the

prima facie review stage, the court's review is limited to "'readily ascertainable facts'" in the record (such as the crime of conviction). (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.) The jury instructions given by the trial court are part of the record of conviction. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 676; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055.)

If the petitioner makes a prima facie showing under section 1170.95, subdivision (c), the court must issue an order to show cause and hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) If a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *Gentile, supra*, 10 Cal.5th at p. 853; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 237, review granted Mar. 10, 2021, S266652.)

B.      *The Trial Court Correctly Found Henderson Is Ineligible for Relief Under Section 1170.95 as to His Murder Conviction*

Henderson contends the superior court erred in finding him ineligible for resentencing as to his murder conviction because it failed to consider whether he was a major participant who acted with reckless indifference to human life under the factors set forth in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. Henderson is correct that he was convicted before the Supreme Court decided *Banks* and *Clark*. But Henderson's conviction was also prior to the 1990 amendment of section 190.2 that allowed the felony-murder special circumstance to be found true without a finding the defendant intended to kill.

12

Section 190.2, former subdivision (a)(17), provided in 1986 (the year of the murder) as a special circumstance, "The murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felonies," including robbery. (§ 190.2, former subd. (a)(17)((i).) The Supreme Court in *Carlos v. Superior Court* (1983) 35 Cal.3d 131, 135, overruled by *People v. Anderson* (1987) 43 Cal.3d 1104, 1138-1139,[8] construed the felony-murder special circumstance in light of the language of the 1978 death penalty initiative and the initiative's presentation to the voters "to require an intent to kill or to aid in a killing as an element of the felony murder special circumstance." Consistent with the holding in *Carlos*, CALJIC Nos. 8.80 and 8.81.17 required the defendant to intend to kill or aid another in killing a human being for a true finding on the felony-murder special circumstance.

However, Proposition 115, passed by the voters in 1990, codified in section 190.2, subdivision (d), a provision that allowed the felony-murder special circumstance to be found true without

---

[8] The Supreme Court in *People v. Anderson, supra,* 43 Cal.3d at pages 1138 to 1139 held "that the broad holding of *Carlos* that intent to kill is an element of the felony-murder special circumstance cannot stand, and that the following narrow holding must be put in its place: intent to kill is not an element of the felony-murder special circumstance; but when the defendant is an aider and abettor rather than the actual killer, intent must be proved before the trier of fact can find the special circumstance to be true."

13

proof of intent to kill where the aider and abettor was a major participant who acted with reckless indifference to human life. (Prop. 115, § 10, codified as § 190.2, subd. (d); see *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 297-298; *People v. Solis* (2020) 46 Cal.App.5th 762, 773.) As the *Tapia* court observed, the amendment of section 190.2, subdivision (d), "changes state law to the detriment of defendants." (*Tapia*, at p. 298, fn. 16.)

The trial court here instructed the jury with CALJIC No. 8.81.17 based on then-applicable law that to prove the felony-murder special circumstance, it must be proved, among other elements, "[t]hat the defendant . . . intended to kill a human being . . . [or] . . . intended to aid another in the killing of a human being." Thus, in finding the special circumstance was true, the jury necessarily found Henderson intended to kill Fields and aided and abetted the killing. Henderson asserts the jury would have understood CALJIC No. 8.81.17 not to require an intent to kill because the general special-circumstance instruction (CALJIC No. 8.80) applied an intent-to-kill requirement to an "aider and abettor," and somehow the jury would have read the two instructions together to believe an intent to kill was required only for a direct aider and abettor and not a defendant convicted under the felony-murder rule. We reject this tortured reading of the jury instructions—CALJIC No. 8.81.17 specifically applies to the special circumstance of a "murder in the commission of [r]obbery or attempted robbery," requiring that the defendant intend to kill or intend to aid another in the killing of a human being. Nothing in CALJIC No. 8.80 suggests otherwise. Thus, Henderson is ineligible for relief as a matter of law because he was convicted on a ground

14

(intent to kill) that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189.[9]

C.      *We Reverse the Superior Court's Order Denying Henderson's Petition as to His Attempted Murder Conviction*

Senate Bill 775 amends section 1170.95 to, among other changes, (1) apply section 1170.95 to convictions for voluntary manslaughter and attempted murder; (2) add new subdivision (b)(3), which requires the appointment of counsel at the prima facie review stage if requested; (3) affirm the standard of proof at the order to show cause hearing is proof beyond a reasonable doubt; and (4) clarify that "a finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." Because the Legislature did not pass these amendments as urgency legislation, they will become effective on January 1, 2022. (See Cal. Const., art. IV, § 8, subd. (c).)

Henderson contends in his supplemental brief that Senate Bill 775's amendments to section 1170.95 apply retroactively to his petition under *In re Estrada* (1965) 63 Cal.2d 740, 745

---

[9]      Henderson also argues the trial court engaged in improper factfinding in relying on the statement by Henderson that the shooter should shoot the victims in the head. Any error in relying on this statement attributed to Henderson is harmless because the jury found Henderson harbored an intent to kill. (See *Lewis, supra*, 11 Cal.5th at p. 974 [on appeal, petitioner "must therefore 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.'"].)

15

(*Estrada*).) Further, because amended section 1170.95, subdivision (a), provides for relief where the petitioner was convicted of "attempted murder under the natural and probable consequences doctrine" and "could not presently be convicted of . . . attempted murder because of changes to Section 188 or 189 made effective January 1, 2019" (§ 1170.95, subd. (a) & (a)(3)), we should reverse the superior court's denial of Henderson's petition because the jury was instructed and relied on the natural and probable consequences doctrine in convicting him of the attempted murder of Davis.

The People agree we should reverse the superior court's denial of Henderson's petition as to his attempted murder conviction and remand for consideration of the petition in light of Senate Bill 775 because the jury was instructed on the natural and probable consequences doctrine, and "there is no utility in adjudicating this appeal under the old law, only for [Henderson] to initiate new section 1170.95 proceedings in several months." We also agree the superior court's order as to Henderson's attempted murder conviction should be reversed, and we remand with directions for the court to appoint counsel for Henderson and, after January 1, 2022, to determine whether Henderson has made a prima facie showing he is entitled to relief under amended section 1170.95, and if he has, to issue an order to show cause and set an evidentiary hearing.[10]

---

[10] Because the special circumstance finding only applied to the murder conviction, the court will need to analyze the attempted murder conviction separately. Although determination of whether Henderson is ineligible for relief as to his attempted murder conviction likely requires factfinding not appropriate for the prima facie review stage, we remand for the

## DISPOSITION

The order denying Henderson's petition for resentencing under section 1170.95 is affirmed as to his murder conviction and reversed as to his attempted murder conviction. We remand with directions for the superior court to appoint counsel for Henderson and, after January 1, 2022, to determine whether Henderson has made a prima facie showing he is entitled to relief under amended section 1170.95, and if he has, to issue an order to show cause and set an evidentiary hearing.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.

---

superior court to make this determination in the first place. We note that defense counsel conceded at the hearing on Henderson's petition that "there was no natural and probable consequence theory of instruction either as to the murder or as to the attempted murder," but he urged the court to issue an order to show cause for the People to prove at an evidentiary hearing that Henderson harbored an intent to kill.